In re VIRGINIA & TRUCKEE RY. et al.

BIGELOW v. ANDERSON et al.

No. H–204.

District Court, D. Nevada.

Jan. 6, 1941.

120

Duncan A. McLeod, of San Francisco, Cal., and Walter Rowson, of Reno, Nev., for Receiver.

Lloyd V. Smith and John S. Field, both of Reno, Nev., for defendants.

NORCROSS, District Judge.

This proceeding was instituted by the above named receiver upon a petition requesting instructions in respect to the claimed authority and rights of defendants in respect to employees of said Railway and Transit Corporations engaged in operating freight motor trucks and passenger, mail and express motor busses upon the public highways, and for a restraining order pending hearing upon application for temporary injunction. A restraining order was issued upon the petition. Defendants appeared by filing a notice of motion for an order dissolving and vacating the temporary restraining order. The motion was denied and a temporary injunction issued. Defendants filed an answer to the petition and the matter submitted upon hearing held thereon.

The answer, among other matters, alleges:

" * * * that Receiver, in so far as the operations of said corporations are concerned in the interstate transportation of passengers and freight by railway is concerned, come within the provisions of the Railway Labor Act being Title 45, Sections 151–164, U.S.C.A. * * * : that

the said Receiver in so far as the operations of said corporation · are concerned with trucking service and business engaged in interstate commerce, come within the provisions of the National Labor Relations Act, being Title 29, Sections 151–219, U.S.C.A. and the Norris LaGuardia Act, Chapter 6, Title 29, Sections 101–115, U.S.C.A. * * *."

"That the defendant, International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Local #533, represent all or a substantial majority of the employees of the Virginia and Truckee Railway, a corporation, and the Virginia-Truckee Transit Co., a corporation, who are employed by said corporations in the operation of the trucking service and business which is conducted by receiver of said corporations; that all of said employees are members of the said defendant union, and have designated said defendant as their sole bargaining agent."

"That the employees, who are employed in the trucking service or business of said corporations, are required to work longer hours and for less pay, than are the employees of other concerns carrying on a trucking business in the same localities; that the employees of said corporations are on occasion required to work from ten to fifteen hours per day; that a labor dispute exists between said employees and said corporations in receivership."

The main question of law presented upon the hearing was in respect to the contention upon the part of the receiver that the employees in both the freight trucking service and the motor transit bus service came within the said Railway Labor Act, while the contention upon the part of defendants was as above stated in their answer. The main controversy was in respect to the trucking operations. No question was raised in respect to both operations being engaged in interstate commerce.

The first section of the Railway Labor Act, Tit. 45 U.S.C.A. § 151, contains the following provision: "The term 'carrier' includes any express company, sleeping-car company, carrier by railroad, subject to chapter 1 of Title 49, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer

in transit, refrigeration or icing, storage, and handling of property transported by railroad, * * *."

It is contended on behalf of defendants that the above expression in parenthesis: "Other than trucking service," excludes motor carrier service of the character here involved from the provisions of the Railway Labor Act. If there was nothing else to consider, than the language used in the section as quoted, on the construction to be placed on the expression, "trucking service," it would not follow that such expression would include motor carrier service engaged directly in interstate transportation and not merely "in connection therewith." The expression: "trucking service," has a very broad application but taken in connection with the accompanying language in the statute, it is clear that it was intended to apply to truckage merely incidental to carrier service.

The "Motor Carrier Act," Title 49 U.S.C.A., Chapter 8, § 301 et seq., deals with motor carriers engaged in interstate commerce "including such motor vehicle operations of carriers by rail or water, and of express or forwarding companies, except to the extent that these operations are subject to the provisions of chapter 1 of this title." Tit. 49 U.S.C.A. § 303(a) (14), § 313(b). Chapter 1, so referred to, is the "Interstate Commerce Act, 49 U.S.C.A. § 1 et seq." American Trucking Ass'ns v. United States, D.C., 17 F.Supp. 655. By the provisions of this Act, the Interstate Commerce Commission has conferred upon it the powers and duties: "To regulate common carriers by motor vehicle * * * qualifications and maximum hours of service of employees, and safety of operation and equipment." 49 U.S.C.A. § 304(a) (1). United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

██ It is the conclusion of the Court that with the exception of the matter of hours of labor, which is under the control of the Interstate Commerce Commission under the provisions of the said Motor Carrier Act, other matters respecting the employees here in question are subject to the provisions of the said Railway Labor Act.

The receiver is directed to take up the matter of adjustment of wages and hours of said operators of motor trucks and motor busses with said employees and with the Interstate Commerce Commission and the National Railroad Adjustment Board as provided in said Motor Carrier Act and said Railway Labor Act. The receiver shall also advise the Wage and Hour Division of the Department of Labor of the proceedings by him taken in the matter.

The receiver is entitled to a decree granting a permanent injunction. It is so ordered. Pending the adoption and filing of findings of fact and decree, the temporary injunction is continued in force.

Counsel for petitioner are directed to submit for consideration of the Court proposed findings of fact and form of final decree and serve a copy thereof upon counsel for defendants.